IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL NIEWIEDZIAL, #Y36960,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**WEXFORD HEALTH SOURCES, INC.,** )<br>**VIPIN SHAH,** )<br>**TERESA GLENDENNING,** )<br>**MARK BRAYFIELD,** )<br>**DEREK RICE,** )<br>**DANYEL REEVE,** )<br>**PENNY ECKEL,** )<br>**SHEILA IKNAYAN,** )<br>**KIMBERLY STEPHENS,** )<br>**JENNIFER FRYBURGER,** )<br>**and DANA SPRAGUE,** )<br>)<br>**Defendants.** ) | Case No. 21-cv-00312-JPG |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

Plaintiff Michael Niewiedzial, an inmate in the custody of the Illinois Department of Corrections (IDOC), brings this civil rights action under 42 U.S.C. § 1983 for constitutional deprivations at Robinson Correction Center (Robinson). Plaintiff claims that Robinson's medical staff denied him timely and adequate treatment for bone spurs and calluses on his left foot, resulting in pain, infection, and amputation. (Docs. 1 and 127). Following preliminary review of this matter under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed with nine claims against the defendants, including two claims against Nurse Teresa Glenndenning under the Eighth Amendment (Count 1) and Illinois medical negligence law (Count 3). (Docs. 124 and 127).

Defendant Glenndenning filed for summary judgment on Count 1 based on Plaintiff's failure to exhaust his administrative remedies in compliance with the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). (Doc. 138) Plaintiff opposes the motion. (Doc. 144). For the reasons set forth below, summary judgment shall be **DENIED**.

1

## BACKGROUND

In the First Amended Complaint, Plaintiff alleges that he suffered from bone spurs and calluses on his left foot during his incarceration. (Doc. 127). Robinson's medical staff made Plaintiff walk on his injured foot while ignoring signs of *Staph* infection beginning June 28, 2019. Nurse Glenndenning allegedly refused to take a culture of his foot wound while cutting off healthy skin multiple times and "continually" telling him that his wounds were not serious. *Id*. at ¶ 72. Plaintiff ultimately lost all five toes and portions of his left foot following three separate amputations. He is now confined to a wheelchair.

The Court screened the First Amended Complaint under 28 U.S.C. § 1915A and allowed Plaintiff to proceed with nine claims against Robinson's individual medical providers and Wexford Health Sources, Inc., including the following two against Nurse Glenndenning:

| | |
|---|---|
| **Count 1:** | Eighth Amendment deliberate indifference claim for inadequate treatment of Plaintiff's left foot beginning on June 28, 2019. |
| **Count 3:** | Illinois medical malpractice/negligence claim for inadequate treatment of Plaintiff's left foot beginning on June 28, 2019. |

(Docs. 124 and 127).

Nurse Glenndenning moved for summary judgment on Count 1. (Doc. 138). The nurse argues that Plaintiff filed only one grievance naming her in connection with inadequate medical care for his left foot, *i.e.*, Grievance 20-988e, and it was denied as late by the Administrative Review Board (ARB). According to Nurse Glenndenning, all other grievances addressed the conduct of other defendants. Nurse Glenndenning seeks summary judgment on Count 1. *Id*.

Plaintiff counters that Grievance 20-988e was timely filed as to Nurse Glenndenning because it described a continuing violation by all medical staff, including the nurse. (Doc. 144). In addition, Plaintiff filed other grievances against the nurse. He referred to her as "Tresa L.-G.," consistent with his reference to other providers using their first names and last initials. Because the number, scope, and timeliness of his grievances and appeals are in dispute, Plaintiff seeks

denial of the pending motion for summary judgment. *Id*.

## FINDINGS OF FACT

Plaintiff filed numerous grievances against medical providers at Robinson for their alleged inadequate treatment of his left foot from June 2019 through February 2021. Nurse Glenndenning summarizes them in her motion. (Doc. 139). In connection with the pending summary judgment motion, the parties focus on two: (1) Grievance 20-0024; and (2) Grievance 20-988e.[1]

**A.      Grievance 20-0024**

Grievance 20-0024 was filed on January 6, 2020. (Doc. 139, ¶ 8) (citing Ex. 1 at ARB 124). There, Plaintiff complained of inadequate medical care for wounds on his left foot and explained that his big toe was amputated on September 11, 2019. *Id*. He said the nurses reported that his wound looked good and Dr. Shah stated he was awaiting approval to send Plaintiff back to the wound doctor. *Id*. Plaintiff wrote that instead of consulting a wound care doctor as planned, Dr. Shah sent Plaintiff to an infectious disease doctor, who took out Plaintiff's pic line prematurely. *Id*. He also complained that Nurse Inkayan kept ripping off the skin around his wound, which caused him to bleed and prevent his foot from healing.[2] *Id*. at ARB 125.

In the same grievance, Plaintiff wrote that Nurse Stephens mixed her own formulas to clean his wounds instead of following consistent orders (Doc. 139, ¶ 9) (citing Ex. 1 at ARB 125). Plaintiff complained that Nurse Hargrave saw his left foot wound discharging pus on November 25, 2019, but did nothing to help the wound heal. *Id*. He was supposed to see a wound doctor on October 24, 2019, but was instead seen on December 5, 2019 and informed by

---

[1] Of the nineteen statement of facts presented, Plaintiff squarely disputes two: SOF 9 and 18. However, in a footnote, Plaintiff explains that his "non-response to the other SOFs in Defendants' Memo is not an admission by Plaintiff to the veracity of those statements. Plaintiff does not respond to the SOFs irrelevant to the issues before this court in Defendant's MSJ on Count 1." (Doc. 144, p. 3 at n.1).
[2] Plaintiff points out that Grievance 20-0024 also states: "This has been going on since surgery so [ ]now (Nurse Tresa L.-G.) says its (sic) not going to scab until it is debr[i]ded. Its (sic) now 11-24-2019. All this time since surgery and the foot isn't (sic) healing. . . ." *Id*. Plaintiff points out that this reference to "Nurse Tresa L.-G." is actually to Nurse Teresa L. Glenndenning. (Doc. 144, pp. 3-4) (citing Doc. 139-1, p. 4).

3

hospital staff that he would need half his left foot amputated in one week. *Id*. Plaintiff claimed Nurse Sprague moved his intravenous line, which caused his pic line to have problems. *Id.* at ARB 127.

**B.      Grievance 20-988e**

Grievance 20-988e also filed an emergency grievance on September 16, 2020. (Doc. 139, ¶ 16) (citing Ex. 1 at ARB 45; Doc. 139-1, pp. 18-21). Plaintiff explained that Nurse Stephens told him that he did not have to wrap his foot during showers on June 24, 2020. *Id*. He also complained that Nurses Stephens, Reeves, Eckel, and Glenndenning refused to take cultures of his infected wounds for two months, which led to the return of his foot infection. *Id*. (citing Ex. 1 at ARB 46). Plaintiff claimed that these nurses refused to follow Dr. Shah's treatment orders or to report Plaintiff's symptoms to Dr. Shah, and Dr. Shah failed to supervise nursing staff to ensure they followed treatment orders.[3] *Id*.

Grievance 20-988e was deemed an emergency and forwarded to a grievance officer for processing on September 21, 2020. (Doc. 139, ¶ 17) (citing Ex. 1 at ARB 44-45). The grievance officer found no evidence to corroborate the allegations and denied Plaintiff's grievance on October 1, 2020. *Id*. The officer noted that, per HCU Martin, Plaintiff was seen by Nurse Rice and the orders given by Dr. Langan from Carle Memorial Hospital were documented. *Id*. (citing Ex. 1 at ARB 44). According to the grievance response, Plaintiff had been educated multiple times that if the foot is healing well, the doctor's orders will change to ensure that the healing process continues and Nurse Stephens and others educated Plaintiff on this topic. *Id*. The CAO concurred with this response on October 6, 2020. *Id*.

The ARB received Plaintiff's emergency Grievance 20-988e on October 26, 2020, and returned it for procedural defects on February 5, 2021—concluding that it was submitted outside

---

[3] Plaintiff points out that the events cited in this grievance occurred over the course of several months and culminated in the third amputation on his left foot on August 14, 2020. (Doc. 144, p. 5) (citing Doc. 139-1, pp. 19-21).

the 60-day timeframe outlined in Department Rule 504. (Doc. 139, ¶ 18). As such, the ARB indicated that it would not be addressed further. *Id.* (citing Ex. 1 at ARB 43). Plaintiff filed suit on March 28, 2021. (Doc. 139, ¶ 19).

## CONCLUSIONS OF LAW

**A.      Legal Standards**

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the pleadings, depositions, interrogatories, admissions, and affidavits show no genuine issue of material fact, the moving party is entitled to summary judgment. FED. R. CIV. P. 56(c). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmovant. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

The Prison Litigation Reform Act requires a prisoner to bring a lawsuit about prison conditions only after he exhausts all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). In order to exhaust administrative remedies, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must occur before the prisoner files suit. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

The Illinois Administrative Code sets forth the steps an IDOC inmate must follow in the grievance process. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). Within sixty (60) days of the incident necessitating use of the process, an inmate must file a grievance with his counselor. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint does not get resolved through the counselor,

the inmate must submit it to a grievance officer, who reports his or her findings and recommendations in writing to the chief administrative officer (CAO) of the facility. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision, which the inmate may appeal with the IDOC Director through the Administrative Review Board (ARB) within thirty (30) days of the CAO's decision. 20 ILL. ADMIN. CODE § 504.850(a). The ARB then submits a written report of its findings and recommendations to the Director for a final decision. 20 ILL. ADMIN. CODE § 504.850(d), (e).

An inmate can file an emergency grievance directly with the CAO. 20 ILL. ADMIN. CODE § 504.840. If the CAO deems the grievance an emergency, it is expedited for processing. *Id*. If the CAO denies the grievance as a non-emergency, the inmate may resubmit it using the standard procedure described above. 20 ILL. ADMIN. CODE § 504.840(c).

**B.     Analysis**

The parties dispute several material facts about the number, scope, and timing of Plaintiff's grievances against Nurse Glenndenning.

With regard to the number of grievances, Nurse Glenndenning argues that Plaintiff filed only one grievance against her, Grievance 20-988e. Plaintiff claims that he filed at least two grievances, including Grievance 20-988e and 20-0024. He simply referred to the nurse by her first name, middle initial, and last initial: "Nurse Tresa L.-G."[4]

With regard to the scope of Plaintiff's complaints, Nurse Glenndenning focuses on a single reference to her, by name, on June 24, 2020 in Grievance 20-988e. Plaintiff points out that Grievance 20-988e refers to ongoing problems with his care by the prison's nurses, including

---

[4] Illinois administrative regulations require a grievance to "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). But, if the names of the individuals are unknown to the offender, the inmate can still file the grievance so long as he "include[s] as much descriptive information about the individual as possible." *Id*.

6

Nurse Glenndenning, over the course of many months.[5]  Moreover, Grievance 20-0024 covers additional complaints against this defendant.

With regard to the timing, Nurse Glenndenning argues that Grievance 20-988e was properly denied as late by the ARB because it was filed more than sixty days after June 24, 2020 (*i.e.*, the only date when she was mentioned by name).  Plaintiff argues that the ARB made the wrong decision because Grievance 20-988e actually addresses the ongoing denial of care by the prison's medical staff, including Nurse Glenndenning, up to and including the date of his third amputation on August 14, 2020.[6]  Plaintiff thus filed the grievance on time in September 2020.

These conflicting material facts about the number of grievances filed against Nurse Glenndenning, the scope of complaints in each grievance, and the timing of the grievances or appeals make summary judgment inappropriate.  Based on the record before the Court, summary judgment must be denied.  If Nurse Glenndenning would like to pursue the affirmative defense based on Plaintiff's failure to exhaust his administrative remedies any further, she must request a *Pavey* hearing by the below-listed deadline.  *Pavey*, 544 F.3d 739.  If she does not intend to pursue this affirmative defense, Nurse Glenndenning must file a motion to withdraw it by the same deadline.  In the latter case, she will be bound by the same merits discovery schedule set for all other parties who did not seek summary judgment on the issue of exhaustion, or the parties may collectively request that the case be referred for settlement.

## DISPOSITION

The Motion for Summary Judgment on the Issue of Exhaustion of Administrative

---

[5] Plaintiff need not identify this particular defendant by her full name every time he refers to her in a grievance.  The purpose of a grievance is to give "prison officials a fair opportunity to address [an inmate's] complaints."  *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). *See also Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)(stating that "[w]e are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.").
[6] In the case of an ongoing violation of an inmate's rights, the Seventh Circuit has held that "[i]n order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Rather, "[s]eparate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id*.

7

Remedies filed by Defendant Nurse Glenndenning (Doc. 138) is **DENIED**.  Defendant Teresa Glenndenning must file a notice within ten (10) days of this Order either requesting a *Pavey* hearing or withdrawing the affirmative defense of exhaustion.

The Motion to Lift Stay on Discovery on the Merits of Plaintiff's Claim in the First Amended Complaint by Plaintiff Michael Niewiedzial (Doc. 146) is **GRANTED**.  The Court will enter a separate Scheduling and Discovery Order to provide the parties with instructions and deadlines for litigation of this matter.

**IT IS SO ORDERED.**

**DATED: 5/23/2024**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**